1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

ELFEGO ARMANDO MONTENEGRO
DE LEON,

12

Petitioner,

13

v.

14

CHRISTOPHER LAROSE, et al.,

15

Respondents.

16

Case No.:  25cv3780-LL-DDL

**ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS**

(ECF No. 1)

17
18    Before the Court is Petitioner Elfego Armando Montenegro De Leon's Petition for

19    Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet.") Also before the

20    Court is Respondents' Return in Opposition to the Habeas Petition. ECF No. 4 ("Ret.") For

21    the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas

22    Corpus and **ORDERS** Petitioner's immediate release from custody.

23    **I.    BACKGROUND**

24    Petitioner is a citizen and national of Guatemala. Pet. ¶ 2. Petitioner initially entered

25    the United States in March 1992 without inspection. Pet. ¶ 3. On June 25, 1992, Petitioner

26    was arrested for possession of a controlled substance and was sentenced to 180 days in jail

27
28

1

1    and a three-year probation.[1] Pet. ¶ 3. On October 2, 1992, Petitioner was removed from the

2    United States pursuant to a final order of removal. Ret. at 2. On or about December 23,

3    1992, Petitioner re-entered the United States without inspection. *Id*.

4         On March 20, 2023, Petitioner was detained by United States Department of

5    Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") and placed

6    in removal proceedings in Otay Mesa, California. Pet. ¶ 5. On the same day, DHS issued a

7    Notice of Intent/Decision to Reinstate Prior Order, which reactivated the final removal

8    order in effect since 1992. Ret. at 2. On August 17, 2023, Petitioner was granted

9    withholding of removal under the Convention Against Torture because he was kidnapped

10   by the police and then brutally beaten by MS gang members in Guatemala. Pet. ¶¶ 6, 22-

11   23; ECF No. 1 at 27–28 (Ex. A.) On August 18, 2023, Petitioner was released from

12   detention and placed under Order of Supervision by ICE. Pet. ¶ 7. Since then, Petitioner

13   reported with ICE every year without an incident. *Id*. ¶ 8.

14        On September 13, 2023, Petitioner appealed the Immigration Judge's denial of

15   withholding of removal under the Immigration and Nationality Act ("INA"). Petitioner's

16   appeal is pending with the Board of Immigration Appeals ("BIA"). Pet. ¶ 10. On September

17   25, 2025, Petitioner was re-detained at his check-in. *Id*. Petitioner claims that ICE revoked

18   his release without providing notice or opportunity to be heard. *Id*. ¶ 13. Respondents are

19   silent on whether any notice or informal interview was provided when ICE re-detained

20   Petitioner. At some time during his detention, Petitioner requested a bond redetermination

21   hearing and was denied release on bond. *Id*. ¶ 12. Petitioner has been detained for almost

22   four months now and challenges his re-detention as unlawful.

23   / / /

24   / / /

25

26

27   [1] On December 11, 2012, Petitioner's felony conviction for possession of a controlled substance was reduced to a misdemeanor. Pet. ¶ 4. Petitioner has not committed any crimes

28   since his last conviction in 1992. Pet. ¶ 15.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order.").

## III.    DISCUSSION

Petitioner essentially brings two claims to argue that he should be released from detention: (1) ICE failed to comply with its own procedures to re-detain him, in violation of the Fifth Amendment Due Process Clause of the U.S. Constitution and 8 C.F.R. §§ 241.4 and 241.13 (Counts II and IV); and (2) Petitioner's prolonged detention is impermissible and unreasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001) (Count I). Pet. ¶¶ 75–95. Petitioner also argues that ICE may not remove him to Guatemala because of his withholding of removal under CAT (Count III). *Id*. ¶¶ 90–91. The Court finds that Petitioner's first claim is meritorious and justifies Petitioner's release; therefore, the Court will only address this claim in this Order.

25cv3780-LL-DDL

1    Petitioner challenges his detention as unlawful because ICE failed to provide the
2    required notice and opportunity to be heard before re-detaining him. The Court agrees.

3    "The Due Process Clause of the Fifth Amendment prohibits the Government from
4    depriving individuals of their life, liberty, or property, without due process of law."
5    *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause
6    applies to all persons within the United States, including [noncitizens], whether their
7    presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "[I]t
8    is well established that the Fifth Amendment entitles [noncitizens] to due process of law in
9    deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process
10   Clause generally "requires some kind of a hearing *before* the State deprives a person of
11   liberty or property." *Zinernmon v. Burch*, 494 U.S. 113, 127 (1990).

12   The detention and release of noncitizens that are subject to a final order of removal
13   are governed by 8 U.S.C. § 1231. This statute provides that "when [a noncitizen]is ordered
14   removed, the Attorney General shall remove the [noncitizen] from the United States within
15   a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). It also authorizes the detention of
16   noncitizens during this removal period. *Id*. § 1231(a)(2). However, once that time passes
17   and "removal is no longer reasonably foreseeable, continued detention is no longer
18   authorized by statute," and the noncitizen must be released on supervised release.
19   *Zadvydas*, 533 U.S. at 699–700; *see* 28 U.S.C. § 1231(a)(3) ("If the [noncitizen] does not
20   leave or is not removed within the 90-day removal period, the [noncitizen], pending
21   removal, shall be subject to supervision under regulations prescribed by the Attorney
22   General.").

23   Once ICE releases a noncitizen on supervised release, "ICE's ability to re-detain that
24   noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-
25   JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal
26   citation omitted). Code of Federal Regulations sections 241.4 and 241.13 govern the
27   release and the revocation of such release of noncitizens who are subject to a final removal
28   order. *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal.

4

Sept. 5, 2025). If ICE chooses to re-detain a noncitizen after they have been released, the noncitizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4 (l)(1); 8 C.F.R. § 241.13(i)(3). Thereafter, the noncitizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).

Here, Respondents do not appear to suggest that Petitioner violated the terms of his supervised release [*see generally* Ret.], ruling out § 241.4(l)(1) or § 241.13(i)(1) as the source of his revocation. Rather they appear to rely on either § 241.4(l)(2) or § 241.13(i)(2). According to Petitioner, ICE told Petitioner that he was being re-detained due to his "1992 criminal conviction" Pet. ¶ 10. Therefore, § 241.13(i)(2) does not apply here since the 1992 criminal conviction does not constitute a "changed circumstance[]" (8 C.F.R. § 241.13(i)(2)) that warrants revocation of removal. Moreover, Respondents have not presented any other changed circumstances that would warrant revocation. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal." *Id*. In other words, Petitioner's release from ICE custody constituted an "implied promise" that his liberty would not be revoked unless he "fails to live up to the [] conditions" of his release. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Respondents have not provided any argument or evidence showing that the Petitioner is dangerous, has become a flight risk, or is now subject to a final order of removal as ICE knew about Petitioner's 1992 conviction and the reactivated final removal order before the release in August 2023.

1    Accordingly, § 241.4(l)(2) applies here. Respondents presumably decided to revoke

2    Petitioner's release because it was "appropriate to enforce a removal order." 8 C.F.R. §

3    241.4(l)(2)(iii). However, ICE still failed to provide notice and informal interview when it

4    re-detained Petitioner, thereby violating Petitioner's due process rights.

5    The requirements for notice and an initial informal interview are not explicitly

6    required in § 241.4(l)(2), but courts have held that the same requirements constrain

7    revocation of release under this provision as well. *See Diaz*, 2025 WL 2581575, at *5

8    (citing various district court cases that have rejected the government's arguments that these

9    provisions do not apply to § 241.4(l)(2)); *Constantinovici v. Bondi*, No. 3:25-CV-02405-

10   RBM-AHG, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025) ("District courts have

11   consistently . . . held that § 241.4(l)(1)'s procedural requirements apply equally to

12   revocation of a noncitizen's release pursuant to § 241.4(l)(2)"; collecting cases).

13   Respondents do not dispute Petitioner's claim that ICE did not serve Petitioner a

14   notice of revocation of release when ICE re-detained Petitioner on September 25, 2025.

15   Pet. ¶¶ 10, 13. Courts have held that "notice must be in writing and contain all the reasons

16   for the revocation of the [noncitizen's] release." *Tran v. Noem*, No. 25-cv-2391 BTM

17   (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025); *see also Sargsyan v. Noem*,

18   No. 25-CV-3857 JLS (JLB), 2026 WL 92044, at *3 (S.D. Cal. Jan. 13, 2026) (finding a

19   generic form revocation letter insufficient to provide notice); *Nouri*, 2025 U.S. Dist. LEXIS

20   171809 at *14 ("Petitioner cannot be expected to 'respond to the reasons for revocation

21   stated in the notification' when the [n]otice does not actually state any reasons for

22   revocation." (citation omitted)). The Court finds that Respondents failed to provide

23   Petitioner a written notice as required by as required by 8 C.F.R. 241.4 (l) and 8 C.F.R.

24   241. 13.

25   Further, after re-detaining a noncitizen who is out on supervision, ICE must

26   "promptly" conduct "an initial informal interview" to "afford the [noncitizen] an

27   opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §

28   241.4(l)(1); 8 C.F.R. § 241.13(i)(3). Here, Respondents again do not dispute Petitioner's

claim that ICE did not conduct an initial informal interview at the time of re-detention. As other courts have found, ICE's failure to provide an informal interview after the revocation of release constitutes a due process violation. *See Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985, at *6 (S.D. Cal. Oct. 10, 2025) (due process violation where "[n]othing in the record indicates that Petitioner was provided with an interview in connection with the revocation of his release or otherwise afforded an opportunity to respond to the reasons for his re-detention."); *Ceesay*, 781 F. Supp. 3d at 164 ("ICE's failure to afford [petitioner] an interview violated his right to due process"); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (holding that informal interview was not sufficiently "prompt" where it took place twenty-seven days after revocation and collecting cases); Order Granting Habeas Corpus Petition, *Sayvongsa v. Noem*, No.: 3:25-cv-02867-AGS-DEB (S.D. Cal. Oct. 31, 2025), ECF No. 10 (granting petition where petitioner did not receive an informal interview for twenty-one days after being re-detained). The Court finds that Respondents failed to provide Petitioner an informal interview as required by 8 C.F.R. 241.4(l) and 8 C.F.R. 241. 13.

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)). Petitioner had a protected liberty interest in remaining out of custody, and thus, ICE was required to follow its regulations before re-detaining the Petitioner. "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).

In sum, the Court finds that because ICE did not follow its own regulations when it re-detained Petitioner, these failures constitute a violation of Petitioner's due process rights and justifies his release from unlawful detention. *See, e.g., Tran*, 2025 WL 3005347, at *3–4 (granting a habeas petition where ICE failed to follow § 241.13(i)(3) procedures); *Bui v.*

25cv3780-LL-DDL

1   *Warden of the Otay Mesa Det. Facility*, No. 25-CV-2111-JES-DEB, 2025 WL 2988356

2   (S.D. Cal. Oct. 23, 2025) (granting a habeas petition where ICE failed to follow § 241.4(l)

3   procedures).

4   **IV.    CONCLUSION**

5         Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas

6   Corpus [ECF No. 1] and **ORDERS** Respondents to immediately release Petitioner from

7   custody subject to the conditions of his preexisting Order of Supervision.[2] The Court

8   **ORDERS** that Respondents cannot re-detain Petitioner without following the procedures

9   set out in 8 C.F.R. § 241.4, 8 C.F.R. § 241.13, and other implementing regulations. As this

10  concludes the litigation in this case, the Clerk of Court **SHALL** close the file.

11        **IT IS SO ORDERED.**

12  Dated:  January 26, 2026

13

14                              Honorable Linda Lopez
                                United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  [2] Petitioner's request for attorney's fees is **DENIED** without prejudice.

8

25cv3780-LL-DDL